**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 2:13-cr-00227-JFC-1 |
| v. | ) |
| | ) |
| NICHOLAS TROMBETTA, | ) |
| | ) Judge Joy Flowers Conti |
| Defendant. | ) |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT NICHOLAS
TROMBETTA'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW REGARDING COMMON INTEREST**

On May 29, 2015, in support of his Motion to Dismiss or Suppress Evidence Due to Government Misconduct ("Misconduct Motion") [Docket No. 68] and in response to this Court's May 13, 2015 Order, Defendant Nicholas Trombetta submitted supplemental proposed findings of fact and conclusions of law regarding the common interest privilege [Docket No. 151].  In response [Docket No. 152], the government offers no proposed findings of fact of its own; it simply attempts to challenge the sufficiency of Trombetta's proposed findings and conclusions. Trombetta now respectfully submits this reply, which explains why the government's arguments fail.

**I.     The Evidence Conclusively Establishes an Agreement to Share Information
        Pursuant to the Common Interest Privilege.**

As previously explained, an important piece of evidence demonstrating the applicability of the common interest privilege is the statement by Askar that "we're all speaking here confidentially." PFF 62. The manner in which this statement was made, the absence of any statements to the contrary by the other lawyers present, and the manner in which the lawyers

proceeded thereafter, demonstrate that Askar was reminding the participants of the common interests of which they were already aware.

The government attempts to downplay the significance of this evidence. It characterizes the parties' response to Askar's remark as mere silence, then argues that mere silence does not equate to consent to proceed pursuant to the common interest privilege. *See* Gov't Response at 31. For that argument, it relies on two inapplicable cases in which private party plaintiffs were demanding performance from defendants under the law of contracts. *See Cohen v. Johnson*, 91 F. Supp. 231, 235 (M.D. Pa. 1950) (holding that plaintiffs were not entitled to purchase coal at a price included in an offer to which defendants did not respond); *Acme Markets, Inc. v. Int'l Assoc. of Machinists & Aerospace Workers*, 506 F. Supp. 92, 94 (E.D. Pa. 1980) (holding that plaintiffs could not enforce restrictions on management that were not included in a collective bargaining agreement). The issue before the Court at this stage in this criminal matter is the applicability of an evidentiary privilege, not the existence of a contract among private parties. *See United States v. Stepney*, 246 F.Supp.2d 1069, 1079 (N.D. Cal. 2003) ("[common interest agreements] are not contracts"). Unlike contracts, common interest agreements do not create rights that parties might choose to enforce against one another, but rather capture "defendants' invocation of privileges set forth in common law." *Id*.

Here, Trombetta does not rely on mere silence by the parties who were present when Askar stated that "we're all speaking here confidentially." Rather, Trombetta relies on their *conduct*.[1] They actively participated in March 8, 2012 recorded conversation in which Askar confirmed the confidentiality of their conversations, and held additional meetings. Their conduct

---

[1] Even if contract law were instructive in this context, the government's argument would still fail. While "silence and inaction" may not be construed as assent under contract law, "an offer may be accepted by conduct." *See Cohen*, 91 F. Supp. at 236. This principle of contract law can be found in the sentence immediately preceding the passage of *Cohen* that the government cited.

2

signaled their agreement that the information they shared would be kept confidential. The government would have the Court believe that these experienced lawyers' lack of an oral response amounts to a rejection to Askar's invocation of the common interest privilege, and that they deliberately choose to waive their clients' privileges by discussing sensitive and confidential legal issues amongst themselves. That is not plausible. The far more reasonable and likely conclusion is that they agreed with Askar and believed their conversation were – and would remain – confidential.

The government also suggests that *testimony* from the lawyers who participated in the confidential discussions is necessary to establish the common interest privilege. In particular, the government argues that Trombetta should have obtained express testimony from Barry in that regard.[2] The government's argument overlooks several important points.

First, Barry *was* asked if he considered the March 8, 2012 meeting to be privileged, and he unequivocally testified that he did. *See* 11/10/14 Tr. at 34:24 – 35:2 ("Q: And at that time did you believe that those conversations that took place at this meeting were privileged? A: Yes.").

Second, when Barry testified at the hearing, undersigned counsel understood that the common interest privilege was an issue reserved for the second phase of the hearing (*see* Docket No. 139 at 41-44) – a belief that this Court previously found to be reasonable during the May 13, 2015 telephonic status conference. Accordingly, there was no perceived need to further develop testimony from Barry on this issue at the first phase of the hearing.

Third, although Askar was unavailable to Trombetta because he asserted his right under the Fifth Amendment to decline to testify, we know that Askar believed the conversations among

---

[2] The government also suggests that counsel should have asked PA Cyber Board member Edward Elder about the common interest privilege. *See* Gov't Response at 23 n.12. Elder is not a lawyer and was hardly a reliable witness. He admitted that he could not recall what took place at Board meetings, he provided testimony that was inaccurate, he was confused about important details, and he admitted to faulty recollection. *See* Docket No. 139 at 20.

the lawyers were confidential because he so stated on the recording made by the government's informant.

In summary, the evidence presented at the hearing more than proves an agreement by a preponderance of the evidence. The record includes testimony from one lawyer that he considered the meeting privileged, a recorded conversation in which one lawyer expressly stated that the group is speaking confidentially, and conduct by all parties demonstrating their agreement. Such evidence conclusively establishes an agreement to continue sharing information pursuant to the common interest privilege.

## II.   The Government Mischaracterizes the Testimony of Barry.

The government contends that Barry's testimony "flatly contradicts" the position that the common interest privilege protected the conversations involving the lawyers. *See* Gov't Resp. at 5. To that end, the government highlights instances where it played for Barry portions of the March 8, 2012 recorded conversation among the lawyers and, in response, Barry testified that those portions had nothing to do with his representation of Trombetta. *See id.* at 5-8. Based on such testimony, the government argues that there could have been no common interest. *See id.* at 5 ("This testimony of Attorney Barry of November 10 could hardly be in greater divergence from the current claims of Defendant Trombetta concerning the supposed common-interest.") The testimony on which the government relies is taken out of context and does not support its position.

At the hearing, Barry was questioned about the nature of his personal representation of Trombetta. Both Trombetta and the government played portions of the March 8, 2012 recorded conversation and asked him whether those portions related to his personal representation of Trombetta. Taken in context, it is clear that when Barry responded that a portion of the

4

conversation did or did not relate to his personal representation of Trombetta, he was indicating whether the issue discussed in that portion was the same or different from the matter on which he personally represented Trombetta.  Barry was also differentiating between matters that he was handling and matters being handled by the lawyers representing NNDS.  Thus, Barry explained that he represented Trombetta with respect to his exit strategy, and other lawyers represented NNDS with respect to the sale of the Lincoln Interactive curriculum.  *See* 11/10/14 Tr. at 131:24-132:2 ("Leo Daly and Ralph Monico had given some opinion that day to the Board of NNDS concerning the sale of curriculum, which I had nothing to do with.") and 140:15-141:2 ("Ralph and Leo had given an opinion which I was not directly involved with…"); 11/12/14 Tr. at 29:9-10 ("I think that this passage [we need to set up a game plan and strategy] you have pointed me to relates to my representation of Dr. Trombetta.").

      Of course, the fact that Barry represented Trombetta personally with respect to his exit strategy and was not advising NNDS with respect to the sale of curriculum does not mean that Trombetta and NNDS did not and could not have common legal interests with respect to those topics, as the government contends in its Response.  Again, Barry made that clear at the hearing when he explained the context.  He testified that he "went to the meeting because [he] expected that there would be some discussion concerning Dr. Trombetta's personal situation," and that other issues were raised, such as the potential sale of the Lincoln Interactive curriculum.  11/12/14 Tr. at 34:13-35:15.  However, towards the end of the March 8, 2012 recorded conversation, Barry made clear that the discussion of a curriculum sale was something that he needed to factor into his personal advice to Trombetta, when he stated: "I learned some more things today that really were not part of my thought process … so therefore I know I need to deal with it."  Govt. Ex. 30A-2 at 57:11-15.  Barry summarized for the group his advice to Trombetta

5

that he should transition to the private sector, which Barry said "is consistent with what we're talking about today." Govt. Ex. 30A-2 at 37:2-11.

Thus, while the sale of Lincoln Interactive curriculum was to be handled by other lawyers and Barry initially did not expect it to be part of the discussion on March 8, 2012, it was clearly a matter of common interest, as it affected Barry's legal advice to Trombetta regarding the exit strategy. Indeed, if the sale of the Lincoln Interactive curriculum were not a matter of common interest to Trombetta and NNDS, as the government contends in its Response, then there would have been no need for Daly to have a follow up meeting with Barry and Trombetta days later. As we know, however, that meeting did take place. PFF 65-67.

## III. The Deception by the Government's Informant Does Not Destroy the Common Interest Privilege.

In his supplemental proposed findings of fact and conclusions of law regarding common interest, Trombetta provided three separate and independent reasons why the participation of government informant Brett Geibel in conversations involving the lawyers does not change the common interest privilege analysis. Docket No. 151 at 13-16. First, the "persons" who may share legal communications without waiving privilege include the agents of a client, and Geibel acted as an agent of NNDS. Second, Geibel's deception of Trombetta and the lawyers, under the direction of the government, does not constitute a knowing waiver of confidentiality by Trombetta or by the separately-represented entities that participated through their counsel. Third, Geibel's participation in certain conversations involving the lawyers directly implicates the issue of government misconduct that the Court reserved for the second phase of its consideration of the Misconduct Motion. It would be an unfair and unjust manipulation of the waiver doctrine if the government were able now to excuse its misconduct by relying on the very recordings that are its fruits.

6

The government does not even address the second and third reasons. Either of those unchallenged reasons is sufficient to overcome an argument that Geibel's participation in the discussions involving the lawyers precludes application of the common interest privilege.

Even with respect to the agency issue, the government overlooks the evidence in the record. The Court does not need a document or witness stating that Geibel was an NNDS agent, as the government seems to suggest. His status as an agent of NNDS can readily be inferred from his role in the meetings with the lawyers and the way that they treated him – as an integral member of the team providing information to the NNDS lawyers so that they could provide legal advice to NNDS. As previously stated, Geibel attended board meetings (PFF 69) and was included in communications with NNDS counsel. PFF 68. The lawyers considered their communications with him to be confidential. PFF 62. Experienced NNDS lawyers would not have consulted with Geibel and have him participate in NNDS board meetings and other discussions with counsel if they did not expect that such consultations and meetings with him would be confidential.

### IV.   The Government's Contention Regarding a Purported Admission by Trombetta Is Incorrect and Confuses the Issues.

The government asserts that "by his own admission" Trombetta cannot establish that the "sharing attorneys represent[ed] separate parties" because he "assigns" representation of NNDS to Askar, Monico and Daly. Gov't Response at 21 n.9. It is not clear what the government means by this odd assertion, which seems to confuse the issues.

Trombetta maintains that each of the four lawyers at issue represented him personally. However, the Court has ordered Trombetta to address the common interest privilege now, before the Court has ruled on whether Trombetta had personal attorney-client relationships with the lawyers at issue. Compliance with the Court's order therefore requires Trombetta to address an

alternative scenario where only a subset of the lawyers at issue represented Trombetta personally.  By referring to Askar, Daly and Monico as NNDS lawyers, Trombetta simply addresses one such alternative scenario.  It is by no means an admission that those lawyers did not also represent him.  Rather, it is an effort by Trombetta to comply with the Court's order to address the common interest privilege while preserving his position regarding his personal attorney-client relationships.

For purposes of the common interest analysis, if one or more NNDS lawyer(s) and one or more of Trombetta's lawyer(s) shared information with respect to matters on which their clients had common legal interests, then the "sharing attorneys represent separate parties" element of the common interest privilege is met.  There is no requirement that *every* attorney sharing information protected by the common interest privilege must each represent a different client.  So long as all sharing attorneys are not representing the same client (in which case they would be co-counsel for that client), their communications are properly analyzed under the test for the common interest privilege.

### V.   The Government's Claim Regarding the Reliability of Trombetta's Pleadings Is Unfounded.

The government contends that the Court should not rely on the factual representations in Trombetta's pleadings[3] without scrutiny of the record, because those pleadings purportedly are "replete" with misrepresentations.  Govt. Response at 9.  It then uses over ten pages to discuss the purported misrepresentations.  *See id.* at 9-19.  As set forth below, the record amply supports Trombetta's pleadings.

---

[3] Although briefing was supposed to be closed on matters other than common interest, the government used its Response to also address certain closed matters.  Regardless of the propriety of the government including such matters in its Response, we will address them briefly here in case the Court wishes to consider them.

The government asserts that there is "absolutely no support" for Trombetta's supplemental proposed finding of fact regarding "coordinated team efforts" continuing after March 8, 2012. That assertion is mistaken. First, the March 8, 2012 recorded conversation itself reflects such coordinated team efforts. Second, there is the testimony of Monico at the hearing, which confirms at least one additional meeting among Daly, Barry and Trombetta.[4] Finally, there is the evidence found in PFFs 66 and 67, which the government completely ignores in its Response. That evidence includes statements by Askar, Geibel and Trombetta expressly referring to the coordination among Barry, Daly, Askar and Trombetta. A finding that the lawyers engaged in coordinated team efforts is, therefore, supported by record evidence and entirely appropriate.

The government challenges Trombetta's proposed finding of fact that Barry represented Trombetta before he represented PA Cyber. To that end, it points to testimony from Barry stating that he received a call in *2012* about representing PA Cyber in litigation. Gov't Response at 18-19. The government states that Barry misspoke when he said 2012, and probably meant 2002 "but we cannot be sure." Response at 19 n.5. Trombetta agrees that Barry misspoke, and also agrees that "we cannot be sure" about the date that such call was made. We do know, however, that Barry represented Trombetta personally with the formation of a corporation in 2003 and with respect to litigation in 2005. PFF 3-4, 6, 11. In any event, the exact date is not material to the issues before the Court. Rather, what is material is that Trombetta's personal

---

[4] The government argues that Monico confirmed only one meeting. He was asked:
Q: Now, you are aware that Mr. Daly attended a meeting on March 8 after the NNDS Board meeting?
A: I am.
Q: And are you also aware that Mr. Daly attended *other meetings* in 2012 with Tim Barry and Nicholas Trombetta?
A: I was not aware at the time the meeting took place, but I learned of it later.
11/25/14 Tr. at 92:25 - 93:6. Monico's testimony then focused on the one meeting that Monico recalled that Daly had mentioned. It does not, however, establish that only one such meeting took place.

relationship with Barry was long-standing, which is an important factor when evaluating the personal nature of Barry's advice to Trombetta in 2012 regarding his transition from PA Cyber to the public sector

The government also points out that there was no evidence at the hearing tying Barry's 412 telephone number to Defense Exhibit BB, which reflects a wiretapped call that was minimized because the agent expected that Trombetta was having a call with "his lawyer." The government is correct with respect to this one intercepted call. However, the record establishes Barry's 412 telephone number was tied to at least *four* other intercepted phone calls. At the hearing, the government stipulated that it auto-minimized four calls that were made to or originated from a 412 telephone number. 10/20/14 Tr. at 48:21-50:2. Barry later testified that the 412 telephone number was his cell phone number. 11/10/14 Tr. at 27:9-12. The stipulations together with Barry's testimony prove that the government knew, *while it was intercepting Trombetta's calls*, that Barry was his personal lawyer. That is why the government auto-minimized calls to and from Barry's 412 telephone number. The fact that Barry's 412 telephone number was not also tied to the intercepted phone call reflected in Defense Exhibit BB, does not affect the agent's testimony that he minimized the call because he believed Trombetta would be speaking to "his" counsel, which is further proof that the government knew Trombetta was represented by counsel *while it was intercepting Trombetta's calls*.

## **CONCLUSION**

On the threshold issue before the Court, Trombetta respectfully submits that the Court should find that Trombetta had personal attorney-client relationships with Attorneys Barry, Askar, Daly and Monico. In the alternative, and for the reasons set forth herein and in Trombetta's Supplemental Proposed Findings of Fact and Conclusions of Law, the Court should

find that the common interest privilege protected the communications at issue from intrusions by the government.  Either way, the Court should proceed to the next phase of the hearing, which will focus on the government's intentional and purposeful recording of privileged conversations and the extent to which the taint from that misconduct requires suppression of evidence or dismissal of the indictment.

                                                          Respectfully submitted,

                                                          <u>s/ Robert A. Salerno</u>
                                                          Adam S. Hoffinger, DC 431711
                                                          Robert A. Salerno, DC 430464
                                                          Schulte Roth & Zabel LLP
                                                          1152 15th Street, N.W.
                                                          Washington, D.C.  20005
                                                          Telephone: (202) 720-7470
                                                          Facsimile: (202) 730-4520
                                                          adam.hoffinger@srz.com
                                                          robert.salerno@srz.com

                                                          *Counsel for Defendant Nicholas Trombetta*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 2:13-cr-00227-JFC-1 |
| v. | ) |
| | ) |
| NICHOLAS TROMBETTA, | ) |
| | ) Judge Joy Flowers Conti |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

I, Robert A. Salerno, counsel for Defendant Nicholas Trombetta, hereby certify that I served the foregoing by causing a copy to be electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all parties of record.

                                                                     s/ Robert A. Salerno
                                                                      Robert A. Salerno
                                                                      *Counsel for Defendant Nicholas Trombetta*

Dated:  June 22, 2015