**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 2:13-cr-00227-JFC-1 |
| v. | ) | |
| | ) | |
| NICHOLAS TROMBETTA, | ) | |
| | ) | |
| | ) | Judge Joy Flowers Conti |
| Defendant. | ) | |

**DEFENDANT NICHOLAS TROMBETTA'S MOTION FOR AN ORDER**
**REGARDING DISCLOSURE OF EXCULPATORY EVIDENCE**

**A.      Introduction**

Defendant Nicholas Trombetta respectfully requests that this Court issue an order directing the government to comply with its obligations under Local Rule of Criminal Procedure 16C and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

Local Rule 16C provides: "At the time of arraignment, and subject to a continuing duty of disclosure thereafter, the government shall notify the defendant of the existence of exculpatory evidence, and permit its inspection and copying by the defendant."  LCrR 16C.

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  Thereafter, in *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court held that if disclosure of evidence or information that would tend to discredit or impeach the credibility of a government witness could be determinative of guilt or innocence, that information must also be disclosed.

Prior to filing this motion, Trombetta sought to determine whether the government had complied with its obligations to produce all *Brady*/Rule 16C materials.  To that end, Trombetta supplied the government with categories of information that would be "favorable to the accused."  In response, the government produced some materials, but it informed Trombetta that it did not consult the categories provided by Trombetta when considering its *Brady*/Rule 16C obligations.  If further informed Trombetta that it had only looked for "*Brady* exculpatory" materials, did not look for and had not produced any "*Brady* impeachment" materials, and would only produce "*Brady* impeachment" materials when it produces Jencks Act materials.[1]

To ensure that all *Brady*/Rule 16C materials are located and timely produced, Trombetta respectfully requests that the Court issue an order directing the government to comply with its obligations.  Specifically, the government should immediately search for *Brady* exculpatory materials and produce them without undue delay.  As explained below, Third Circuit authority is clear that the Court has authority to set an early deadline for production of *Brady* impeachment materials, and that the government must comply with that deadline even if those materials are contained within Jencks Act materials.  Accordingly, with respect to any witnesses that the government currently intends to call at trial, the government should immediately search for *Brady* impeachment materials and produce them without undue delay.  Production of all other *Brady* impeachment materials should be made as soon as the government becomes aware of them, and in any event by a deadline established by this Court, which we respectfully submit should be at least 45 days before trial.  Finally, when searching for all *Brady*/Rule 16C materials, the government's search should include, but not be limited to, the categories set forth in Section D below, and it should search not only in its own files, but also the files of the agents and other federal, state and/or local agencies working with the government in this matter.

---

[1] Trombetta has filed a separate motion seeking disclosure of Jencks Act materials 30 days before trial.

**B.      The Scope of the Government's Rule 16C/Brady Obligations**

> "[E]xculpatory evidence" as referenced in Local Criminal Rule
> 16(c) is defined by the Court based on case law as follows: all
> material information favorable to the accused because it tends to:
> (1) cast doubt on the defendant's guilt as to any essential element
> in any count in the indictment or information; (2) cast doubt on the
> admissibility of evidence that the government anticipates offering
> in its case-in-chief, that might be subject to a motion to suppress or
> exclude, which would, if allowed, be appealable pursuant to 18
> U.S.C. § 3731; (3) cast doubt on the credibility or accuracy of any
> evidence that the government anticipates offering in its case-in-
> chief; or (4) diminish the degree of the defendant's culpability or
> defendant's Offense Level under the United States Sentencing
> Guidelines.

*United States v. Turner*, No. 2:11-cr-197, 2012 WL 832884, at *1 (W.D. Pa. March 12, 2012).

In *United States v. Bagley*, the Supreme Court "rejected any . . . distinction between

impeachment evidence and exculpatory evidence."  473 U.S. 667, 676 (1985).  Impeachment

evidence is "evidence favorable to an accused" that "if disclosed and used effectively . . . may

make the difference between conviction and acquittal."  *Id.* (citation omitted); *see also United

States v. Higgs*, 713 F.2d 39, 42 (1983) ("The rule laid out in *Brady* requiring disclosure of

exculpatory evidence applies both to materials going to the heart of the defendant's guilt or

innocence and to materials that might well alter the jury's judgment of the credibility of a crucial

prosecution witness.").

For purposes of satisfying its *Brady*/*Giglio* obligations, "the government's duty to

disclose . . . reaches beyond evidence in the prosecutor's actual possession."  *United States v.

Risha*, 445 F.3d 298, 303 (3d Cir. 2006).  "[P]rosecutors have a 'duty to learn of any favorable

evidence known to the others acting on the government's behalf in the case, including the

police.'"  *Id.* (citation omitted).  The Third Circuit has held that "the rough interview notes of

F.B.I. agents should be kept and produced so that the trial court can determine whether the notes

should be made available to the appellant under the rule of [*Brady*]." *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977); s*ee also Wilson v. Beard*, 589 F.3d 651, 663 (3d Cir. 2009) ("[T]he prosecution bears the burden of disclosing to the defense a prosecution witness's criminal record, whether or not an explicit request has been made by defense counsel."); *United States v. Hawkins*, No. 1:11cr61, 2014 WL 7157272, at *4 (W.D. Pa. Dec. 15, 2014) ("To the extent any rough notes and investigative reports fall within these limited areas of disclosure, the government shall produce them in accordance with this memorandum and order of court.").

*Brady* should be interpreted liberally, in favor of disclosure.  *See Kyles v. Whitley*, 514 U.S. 419, 439-40 (1995); *United States v. Agurs,* 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure.").  Erring on the side of disclosure "will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." *Kyles*, 514 U.S. at 440.

Furthermore, *Brady* impeachment evidence must be disclosed pursuant to the government's *Brady* obligations even if it is a witness statement that also falls within the Jencks Act.  The Third Circuit and district courts in this jurisdiction have so held.

In *United States v. Starusko*, 729 F.2d 256 (3d Cir. 1984), the defendant argued that an FBI report of an interview with a government witness should have been disclosed pursuant to the district court's order addressing disclosure of *Brady* material.  The government argued that the defendant was not entitled to the report as *Brady* material because it could only be used to impeach witnesses and therefore was only subject to disclosure under the Jencks Act.  *Id.* at 259. The Third Circuit rejected the government's argument.  It held that "the government was

mistaken in classifying the report as Jencks Act material and withholding it on that basis." *Id.* at

263.  As the *Starusko* Court explained:

> Under *Brady*, the defendant is apprised of the existence of exculpatory material; should the matter pertain to a possible government witness and should the government elect not to call that witness, the defendant has options of how to proceed on the basis of the exculpatory information received. The same is not true under the operation of the Jencks Act: should the government elect not to produce the witness at trial whose statements are in its hands and whose testimony could conceivably assist the defendant, the defendant may never know that statements – exculpatory or otherwise – exist. Where a court has ruled that impeachment material falls more under *Brady*, instead of or in addition to, the Jencks Act, and orders it disclosed, the defendant has received a guarantee of protection.

*Id.* at 265.  Indeed, the Court was highly critical of the government for choosing not to produce

the impeachment evidence as *Brady* material based on its belief that the Jencks Act was

dispositive.  *Id.* at 263; *accord United States v. Poindexter*, 727 F. Supp. 1470, 1485 (D.D.C.

1989) ("*Brady* obligations are not modified merely because they happen to arise in the context of

witness statements.   The government therefore has the obligation to produce to defendant

immediately any exculpatory evidence contained in its Jencks materials, including exculpatory

impeachment material . . . .").

    In *United States v. Kubini*, 19 F. Supp. 3d 579 (W.D. Pa. 2014), the defendant sought

disclosure of memoranda of interviews of two government witnesses as *Brady* material.  The

court explained that "the fact that the prior statements may be used to impeach the witnesses

does not alter the character of the evidence under *Brady* if it is material to the determination of

defendant's guilt or innocence at trial . . . ."  *Id.* at 633.  Accordingly, the Court ordered their

production in accordance with the deadline for production of *Brady* materials.  *Id.*; *accord*

*United States v. Beech*, No. 2:13cr214, 2015 WL 3514192, at *3 (W.D. Pa. June 4, 2015) ("The

government's early production of *Higgs*-type impeachment material may well overlap with its subsequent production under the Jencks Act and provide defendant with 'advanced' notice of certain witnesses the government intends to use at trial.  Nevertheless, the court notes that after disclosure is made defense counsel can more fully advise his client regarding the appropriate development of the case, including consideration of any plea agreement offered by the government."); *United States v. Kerr*, No. 2:11cr188, 2012 WL 3929380, at *4 (W.D. Pa. Sept. 7, 2012) (impeachment material is producible under *Brady* even if it overlaps with subsequent production of Jencks Act and provides advance notice of certain government witnesses); *United States v. Antoine*, No. CR10-229, 2012 WL 3279195, at *4 (W.D. Pa. Aug. 9, 2012) ("[A] statement by a witness or confidential informant can be exculpatory evidence which must be disclosed to a defendant under *Brady*.").

**C.      This Court Should Order the Government to Look for and Produce All *Brady*/Rule 16C Materials.**

By instituting Rule 16C, the Western District of Pennsylvania already requires that the government provide exculpatory material at the time of arraignment, and on a continuing basis thereafter.  To date, the Government has not produced all exculpatory material.  It has not considered its obligations with respect to the categories of exculpatory documents provided by Trombetta.  It did not even produce to Trombetta as *Brady* material the statements of co-defendant Prence, which were known to the government[2] and are replete with exculpatory information.[3]  It has neither looked for nor produced exculpatory evidence that it considers to be "*Brady* impeachment" and has informed counsel that it will not do so until such time as it also

---

[2] For example, the May 9, 2013 proffer session was attended by Assistant U.S. Attorney James Wilson and five government agents.

[3] The government recently produced the statements of Prence, but not as *Brady* material.  It did so only after Trombetta repeatedly sought their production in connection with the *Bruton* issue that is the subject of Trombetta's Motion for Severance.

produces Jencks Act materials. Clearly, there is a real need for the Court to issue an order directing disclosure of *Brady*/*Giglio* materials.

The Court has the authority to set deadlines by which the production of *Brady*/*Giglio* material must be completed. *Starusko*, 729 F.2d at 261 ("[A] district court may dictate by court order when *Brady* material must be disclosed, and absent an abuse of discretion, the government must abide by that order.").

Trombetta respectfully submits that with respect to *Brady* exculpatory materials, the Court should direct the government to immediately search for and produce them without undue delay.

With respect to *Brady* impeachment materials, the Third Circuit has a "longstanding policy of encouraging early production." *Starusko*, 729 F.2d at 261; s*ee also United States ex rel. Marzeno v. Gengler,* 574 F.2d 730, 739 (3d Cir. 1978) ("[A] prosecutor's timely disclosure obligation with respect to this type of material cannot be overemphasized if due process is to be afforded a defendant at the trial."); *United States v. Kaplan*, 554 F.2d 577, 578 (3d Cir. 1977) ("[W]e disapprove and discourage a practice of delayed production."); *Government of the Virgin Islands v. Ruiz*, 495 F.2d 1175, 1179 (3d Cir. 1974) (encouraging "[a]n affirmative policy of prompt compliance"); *United States v. Yawson*, Crim. No. 13-271, 2014 WL 3401663, at * (W.D. Pa. July 10, 2014) ("[T]he Third Circuit Court of Appeals encourages adherence to a long-standing policy of promoting early production of all types of *Brady* material 'to ensure the effective administration of the criminal justice system.'") (citations omitted); *United States v. Epps*, 982 F. Supp. 2d 564, 567 (W.D. Pa. 2013) (same); *Kerr*, 2012 WL 3929380, at *4 ("[C]ases by the Third Circuit have reiterated and encouraged adherence to the long-standing policy of promoting the early production of all types of *Brady* material, including impeachment

7

and so-called *Higgs* materials."); *United States v. Turner*, 2012 WL 832884, at *1 ("The Court notes that it interprets relevant case law of the Court of Appeals for the Third Circuit as encouraging the early disclosure of all exculpatory evidence, *including strictly impeachment evidence*." (emphasis added)).

Early disclosure is critically important in this complex case, especially with respect to the two government confidential informants known to the defense – Brett Geibel and Jane Price. Both were intimately involved in events that are alleged in the indictment to provide the basis for the charges against Trombetta.  Both have taken actions as owners and officers of Avanti Management Group ("Avanti") (including control over the company's bank accounts and operations) which cast doubt on the allegations in the indictment that they were not the true owners of Avanti.  Both are alleged in the indictment to have made misstatements on their federal income tax returns.  Both faced potential charges, have been cooperating with the government's investigation since its inception, and likely have cooperation agreements with the government.  Accordingly, there will likely be documents and information suggesting that they have an incentive to curry favor with the government.  On information and belief, at least one has a substantial financial interest in the outcome of this criminal proceeding.

The amount of *Brady* impeachment evidence is likely to be significant.  Both informants known to the defense likely made repeated statements to the government prior to becoming informants.   At the direction of the government, both made surreptitious recordings of conversations and had ongoing contact with government agents over approximately seven months with respect to those recordings.  Indeed, according to the testimony of FBI Special Agent Samantha Bell at the hearing on Trombetta's Motion to Dismiss or Suppress Evidence

Due to Government Misconduct ("Misconduct Motion") [Docket No. 68], the informants had contact with government agents *before and after every conversation they recorded*.

Finally, many of the actions that are the subject of the indictment were taken in consultation with lawyers.  To the extent that the government intends to call witnesses who are lawyers, disclosure and use of impeachment evidence with respect to those witnesses will likely raise complex issues with respect to privilege, common interest, and waiver that will take substantial time to analyze and resolve prior to trial.

By this time, almost two years after indictment, the government must know who most, if not all, of its witnesses will be.  That is certainly true with respect to informants Geibel and Price, upon whom much of the government's case will rest.  For such witnesses, there is no reason why the government should delay compliance with its obligations under *Brady*/*Giglio*. Accordingly, the Court should order the government to immediately look for *Brady* impeachment material for such witnesses and produce such materials without undue delay.  As for all other government witnesses, Trombetta respectfully submits that a deadline for production of all *Brady* impeachment materials 45 days before trial is necessary to "ensure the effective administration of the criminal justice system."

**D.      Specific Categories of *Brady*/*Giglio* Materials That Should Be Produced**

Trombetta also respectfully submits that the *Brady*/*Giglio* materials that the government must look for and produce include, but are not limited to, the following categories of documents and information:

1.   Documents or information that tend to cast doubt on the accuracy of any of the allegations in the indictment.

2.   Documents or information that tend to cast doubt on whether Trombetta committed any essential element of the offenses charged in the indictment, including but not limited to those indicating or establishing that:

    a. Trombetta engaged in any conduct alleged in the indictment upon the advice of legal counsel or accounting professionals;

    b. Trombetta engaged in any conduct alleged in the indictment in good faith and/or with the belief that his conduct did not constitute a crime;

    c. the alleged "straw owners" of Avanti had the authority to control the operations of Avanti, and had the authority to authorize or approve any of the conduct alleged in the indictment;

    d. Trombetta did not instigate, control, authorize, approve or otherwise acquiesce in the conduct that is alleged in the indictment; and

    e. any meeting, conversation, use of words, or practice that is the subject of the indictment does not violate statutes, regulations, standards or established business practices.

3. Documents or information that tend to cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief or that might be subject to a motion to suppress or exclude.

4. Documents or information that tend to cast doubt on the accuracy of any evidence that the government anticipates offering in its case-in-chief.

5. Documents or information that may diminish Trombetta's degree of culpability or offense level under the United States Sentencing Guidelines.

6. Documents or information that tend to cast doubt on the credibility of the government's witnesses, including:

    a. prior inconsistent statements by the witnesses;

    b. documents or information relating to any perceived inconsistencies in statements given by witnesses, including but not limited to inconsistences between agents' and prosecutors' rough notes and the FBI 302s of the witnesses, and the notes themselves;

    c. bias, including hostility or animosity towards Trombetta or towards a group of which Trombetta is a member or with whom he is affiliated, or any relationship that a witness may have with any alleged victim;

    d. pecuniary or other interest in the outcome of the proceedings against Trombetta, including but not limited to the interest of any witness in any *qui tam* action;

    e. any formal or informal promises, consideration or inducements by the government to a witness (whether directly to a witness or indirectly to a witness' attorneys, friends, family, employer, or business associate), including with respect to the witness' tax liability;

      f.  the tax returns of all witnesses alleged to have overstated or misrepresented their income in connection with the *Klein* conspiracy in Count Six of the Indictment;

      g.  any favors or things of value provided by the government to the witness;

      h.  evidence bearing adversely on the witnesses' character or reputation for truthfulness, including any assessments or opinions by government agents;

      i.  evidence regarding the reliability of a witness' testimony, including any use of alcohol or drugs, mental health issues, or other issues that could affect ability to perceive and/or recall events;

      j.  records of any prior criminal convictions, arrests and/or criminal charges and, if applicable, any presentence reports;

      k.  any known but uncharged conduct that may provide an incentive for a witness to curry favor with the government;

      l.  the cooperation agreements, proffer agreements and/or other agreements between the government and Brett Geibel and Jane Price;

      m.  the disclosure statement(s) served on the government by any witness who is a *qui tam* relator;

      n.  prior bad acts (*see* Fed. R. Evid. 404(b));

      o.  the fact that any witness was a target or subject of investigation and/or threatened with prosecution, even if the witness was never charged;

      p.  employment personnel files; and

      q.  the date of each and every interview, debriefing, "queen for a day" session, proffer, deposition, response to civil investigative demand, or other statement or description of alleged facts made by the witness.

7.  With respect to the agents who interviewed and/or investigated Trombetta: (a) the agents' background or training, (b) prior transcripts of cases in which the agents testified, (c) the agents' personnel files.

8.  Documents and information reflecting any divergence or inconsistency between the rules, regulations and procedures applicable to the government's attorneys, investigators and agents, and their actual conduct during the investigation of Trombetta.

The government should be required to confirm that its search for *Brady*/*Giglio* materials includes these categories of documents and information.

Moreover, to ensure that all existing *Brady*/*Giglio* materials are produced, the Court should order the government to look for such materials not only in its files, but also in the files of the agents acting on its behalf in this matter, and in the files of other federal, state and/or local agencies working with the government in this matter (including but not limited to the Federal Bureau of Investigation, Internal Revenue Service and the Department of Education).

Finally, to ensure that no *Brady*/*Giglio* materials are inadvertently destroyed, the Court should order that the government immediately halt any routine document destruction or auto-deletion of materials that should be reviewed, including but not limited to rough notes, emails and hard drives of government agents that may contain drafts of FBI 302s, Department of Treasury memoranda, or other documents.

**CONCLUSION**

For the foregoing reasons, Defendant Nicholas Trombetta respectfully requests that the Court issue an order directing that:

(a) the government's search for *Brady*/Rule 16C materials should include, but not be limited to, the categories set forth in Section D above;

(b) when searching for *Brady*/Rule 16C materials, the government should search not only in its own files, but also the files of the agents and other federal, state and/or local agencies working with the government in this matter;

(c) the government should immediately search for *Brady* exculpatory materials and produce them without undue delay;

(d) with respect to any witnesses that the government currently intends to call at trial, the government should immediately search for *Brady* impeachment materials and produce them without undue delay;

(e) production of all other *Brady* impeachment materials should be made as soon as the government becomes aware of them, and must be completed at least 45 days before trial.

Respectfully submitted,

s/ Robert A. Salerno
Adam S. Hoffinger, DC 431711
Robert A. Salerno, DC 430464
Schulte Roth & Zabel LLP
1152 15th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 720-7470
Facsimile: (202) 730-4520
adam.hoffinger@srz.com
robert.salerno@srz.com

*Counsel for Defendant Nicholas Trombetta*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 2:13-cr-00227-JFC-1 |
| v. | ) | |
| | ) | |
| NICHOLAS TROMBETTA, | ) | |
| | ) | Judge Joy Flowers Conti |
| Defendant. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Robert A. Salerno, counsel for Defendant Nicholas Trombetta, hereby certify that I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all parties of record.

<u>s/ Robert A. Salerno</u>
Robert A. Salerno
*Counsel for Defendant Nicholas Trombetta*

Dated:  July 13, 2015